UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL GREGG, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:20-CV-766 RLW |
| | ) | |
| B&G TRANSPORATIONS, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the following discovery motions: Defendant Bradley Olson's motion to quash third party subpoenas and notices of deposition, (ECF No. 32); Plaintiff Bridgett Bendyk's Motion to Compel Discovery Reponses (ECF No. 35); Defendants B&G Transportations, LLC ("B&G Transportation") and Bradley Olson's Motion to Quash Plaintiff Bridgett Bendyk's Subpoena Duces Tecum issued to a third party (ECF No. 38); and Defendants B&G Transportation and Bradley Olson's Motion to Quash Plaintiff Bridgett Bendyk's Amended Subpoena Duces Tecum issued to a third party (ECF No. 45).   The motions are ripe for review.

### I. Background

This case arises out of a motor vehicle collusion that occurred on January 7, 2020, at a gas station in Kingdom City, Missouri.  Plaintiff Michael Gregg was standing outside the rear door of his pickup truck when he was struck by a tractor trailer backing out of a parking space.  Defendant Olson was the driver of the tractor trailer.  Plaintiffs allege defendant Olson was an employee and/or acting as an agent of Defendant B&G Transportation at the time of the incident.  Plaintiffs allege Michael Gregg was crushed between his pickup truck and the tractor trailer and sustained

numerous serious injuries as a result of the incident.  Plaintiff Bendyk was in the pickup truck at the time and witnessed her boyfriend, Plaintiff Gregg, being crushed and seriously injured.

In their First Amended Complaint, Plaintiffs bring the following five counts against the two defendants: Negligence (Count I), Negligence Per Se (Count II); Negligent Entrustment (Count III); Negligent Hiring, Training, and Retention (Count IV); and Negligent Inflection of Emotional Distress (Count V.).

## II. Discussion

### A.    Defendant Olson's Motion to Quash

Defendant Olson moves, pursuant to Fed. R. Civ. P. 45(d)(3) to quash subpoenas duces tecum and notices of deposition that were issued to non-parties in this suit.  On January 14, 2021, Plaintiff Bridgett Bendyk issued subpoenas and notices of deposition for the custodians of record for the following six companies: Transport America, Red Hawks Transportation, Inc., Purdy Brothers Trucking, JMS Transportation Co., Inc., First Fleet Inc., and Bohren Logistics, Inc.  The subpoenas and notices of deposition seek "full and complete" copies of Bradley Olson's employment files, applications for employment, personnel files, disciplinary and employment records, and all documents related to the termination of Bradley Olson. (ECF No. 32, Ex, 1 at 7, 14, 21, 28, 35, and 42).

Defendant Olson states in his motion that prior to his employment with B&G Transportation, which began on or about May 13, 2019, he was an independent contractor for JMS Transportation Co., Inc., beginning in April 2018, an employee of First Fleet, Inc. from December 2016 to April 2018, an employee of Red Hawk Transportation from January 2015 through September 2016, was an independent contractor for Bohren Logistics, Inc. from August 2015 though December 2015, an independent contractor for Transport American from April 2010

through August 2014, and an employee of Purdy Brothers Trucking from January 2008 though April 2010.

Defendant Olson opposes the subpoenas and notices of deposition on two grounds. First, he argues that his prior employment is not at issue in this case, and the information sought lacks any probative value, because there can be no reasonable expectation that the files maintained by these six trucking companies contain any information relevant to the incident involving the Plaintiffs on January 7, 2020. Second, Defendant Olson argues that the subpoenas and notices of deposition are an improper invasion of his privacy, and the files they seek contain "private sensitive information and medical records that are protected by HIPAA." (ECF No. 32 at 3).

Plaintiff Bendyk responds that Plaintiffs have pleaded a claim for negligent hiring and entrustment and, therefore, the subpoenas and notices of deposition are reasonably calculated to lead to the discovery of admissible evidence. As for Defendant Olson's arguments regarding privacy, Plaintiff Bendyk responds that any privacy concerns can be addressed with a protective order.

Federal Rule of Civil Procedure 45 governs the issuance of third-party subpoenas in civil actions pending in the federal courts. The Rule requires that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Rule 45(d)(3)(iv) requires a court, on timely motion, to quash or modify a subpoena that subjects a person to such a burden. "A party seeking to quash a subpoena bears the burden to demonstrate that compliance would be unreasonable or oppressive." Memhardt v. Nationstar Mortg., LLC, No. 4:17-CV-01411-AGF, 2018 WL 705052, at *2 (E.D. Mo. Feb. 5, 2018) (interim quotations omitted). "'[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the

balance of competing needs.'" Par Pharm., Inc. v. Express Scripts Specialty Distribution Servs., Inc., No. 4:17MC510 RLW, 2018 WL 264840, at *2 (E.D. Mo. Jan. 2, 2018) (quoting Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2, 197 F.3d 922, 927 (8th Cir. 1999)) (alteration in original). "Where, as here, discovery is sought from a non-party, courts have wide latitude in deciding motions regarding non-party subpoenas, and courts are directed to give special consideration in assessing whether the subpoena subjects a non-party to annoyance or an undue burden or expense." Id. (interim quotations omitted).  Other considerations include the balance between "the potential value of the information to the party seeking it against the cost, effort, and expense to be incurred by the person or party producing it." Taber v. Ford Motor Co., No. 17-09005-MC-W-SWH, 2017 WL 3202736, at *2 (W.D. Mo. July 27, 2017), objections overruled, No. 17-09005-MC-W-SWH, 2017 WL 4685271 (W.D. Mo. Oct. 18, 2017) (interim quotations omitted).

In this case, the companies that are subject to the subpoenas have not moved to quash, and Plaintiff Bendyk's counsel represents that none of the companies object to the production of any of the records.  Instead Defendant Olson is objecting on relevancy and privacy grounds.[1]

---

[1]Normally, a party to the underlying suit does not have standing to challenge a subpoena issued to a third party pursuant to Fed. R. Civ. P. 45, "unless the party claims some personal right or privilege in the information sought by the subpoena." United States v. Idema, 118 F. App'x 740, 744 (4th Cir. 2005); see also Green v. Sauder Mouldings, Inc., 223 F.R.D. 304, 306 (E.D. Va. 2004). Here, Plaintiffs have not objected on standing grounds to Defendant Olson moving to quash the subpoenas, and the Court will follow other district courts that have found an individual party may challenge a third party subpoena seeking employment records.  See, e.g., Hendricks v. Total Quality Logistics, 275 F.R.D. 251, 253 n. 1 (S.D. Ohio 2011) ("[C]ourts have repeatedly found that an individual possesses a personal right with respect to information contained in employment records and, thus, has standing to challenge such a subpoena."); Barrington v. Mortage IT, Inc., No. 07-61304-CIV, 2007 WL 4370647 at *2 (S.D. Fla. Dec. 10, 2007) (same, and collecting cases); Chamberlain v. Farmington Sav. Bank, No. 3:06CV01437 CFD, 2007 WL 2786421, at *1 (D. Conn. Sept. 25, 2007) ("The plaintiff clearly has a personal right with respect to information contained in his employment records."); Stewart v. Mitchell Transp., No. 0CIV.A. 01-2546-JWL, 2002 WL 1558210, at *2 (D. Kan. July 11, 2002) ("The Court finds that [the defendant] clearly

With regard to relevancy, the Court agrees with Plaintiffs that the records sought in the subpoenas and notices of deposition fall within the scope of discovery.  Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery in this matter and provides:

> (1)    Scope in General.  Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"The scope of discovery under Rule 26(b) is extremely broad.  Gowan v. Mid Century Ins. Co., 309 F.R.D. 503, 508 (D.S.D. 2015) (citing 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure §§ 2007, 3637 (1970)).  "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession." Hickman v. Taylor, 329 U.S. 495, 507 (1947).  Relevancy in this context "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Jo Ann Howard & Assocs., P.C. v. Cassity, 303 F.R.D. 539, 542 (E.D. Mo. 2014) (citation and quotation omitted).

For all the reasons outlined in Plaintiff Bendyk's response memorandum, the Court agrees that the subpoenas and notices of depositions are reasonably calculated to lead to the discovery of admissible evidence.  The information sought is relevant to Plaintiff's claims of negligence and

---

has a personal right with respect to the information contained in his personnel files, job applications, and performance evaluations. Thus ... [the defendant] has standing to move to quash the subpoenas served on his employers....").

negligent hiring. The information Plaintiff Bendyk is seeking is relevant to statements Defendant Olson has made about his qualifications to operate a commercial motor vehicle and could be used for purposes of impeachment. In addition, information in the employment records, such as Defendant Olson's driving records, could be relevant to Plaintiff's claim for punitive damages.

As for the issue of privacy, the Court also agrees with Plaintiff Bendyk that Defendant Olsen's privacy concerns can be addressed with a protective order. Defendant Olson argues there <u>may</u> be medical information in his employment records that would be protected under the Health Insurance Portability and Accountability Act of 1996, Pub.L. No. 104–191, 110 Stat.1936 ("HIPPA"). HIPPA, however, provides for disclosure in federal cases where a qualified protective order has been entered. HIPPA allows disclosure of protected health information pursuant to a subpoena in a judicial proceeding, where a protective order is in place that "[p]rohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested." 45 C.F.R. § 164.512(e)(v)(A). While there is no protective order in place at this time, Plaintiff Bendyk has proposed entering into a stipulated protective order. The Court agrees that a proper protective order would address Defendant Olson's privacy concerns, and the Court will order the parties to file a stipulated protective order before the disclosure of Defendant Olson's employment records. For the foregoing reason, Defendant Olsen's motion to quash is denied.

**B.      Documents and Information Related to Surveillance**

Plaintiff Bendyk moves to compel Defendants to respond to interrogatories and produce documents. More specifically, she requests that Defendants produce information related to surveillance of Plaintiff Bendyk conducted by Marshall Investigative Group ("Marshall") at the direct of the defendants.

In her motion, Plaintiff Bendyk states that sometime after the incident on January 7, 2020, Plaintiff noticed she was being followed by a man in a car. She later learned that he was a private investigator from Marshalls hired by the defendants in this case. According to Plaintiff Bendyk, Defendants neither disclosed the identity of the private investigator nor any communication between the investigator and Defendants in their Rule 26 disclosures. Defendants did disclose the investigation report from Marshall in response to a request for production of documents. Plaintiff Bendyk states in her motion that Defendants have failed to produce any further information about the investigation report, including any information as to how the report was generated, how and why Marshall was retained, or any communications about the scope of its work. Plaintiff Bendyk asserts this information would be responsive to Interrogatory No. 6 of Plaintiff Bendyk's First Set of Interrogatories and Requests Nos. 4, 5, 6, 11, and 15 of Plaintiff Bendyk's First Request for Production of Documents. She seeks an order from the Court compelling Defendants "to turn over the identity of the private investigator that Defendants hired to follow Plaintiff, and all of the communications, draft reports, and documents that show how the investigator's report came to be, and at whose direction it was obtained." ECF No. 36 at 2. She asks that Defendants be compelled "to provide all documents and things in Defendants' possession, custody, or control that describe the circumstances that led to the creation of the private investigator's report, including any written correspondence (including that exchange between counsel and the private investigator and/or his firm), retention agreement, photographs, videos that pertain to the report or to the private investigator . . . ." Id.

Defendants respond that the documents and information Plaintiff Bendyk seeks to compel in her motion do not relate to many of the requests and interrogatories referred to in her motion, namely Requests Nos. 4, 5, 6 and 15 from Plaintiff Bendyk's First Request for Production of

Documents.[2]  Defendants further state that they have agreed to produce additional information about the investigator, the date the investigator was hired, dates surveillance was conducted, the means and methods of surveillance, and information generated by surveillance, as well as surveillance videos of Plaintiff Bendyk.  Defendants assert, however, that they will not voluntarily produce "communications exchanged between Defendant and the private investigator" or "all of the communications, draft report, and documents that show how the investigator's report came to be, and at whose directed it was obtained."  ECF No. 39 at 4.

In the meantime, on February 24, 2021, Plaintiff Bendyk mailed a subpoena duces tecum and Notice of Deposition to the Custodian of Records for Marshall seeking:

> (1) all written correspondence exchanged between Great West Casualty Company and Marshall Investigative Group pertaining to Bridgette Bendyk and/or Michael Gregg; (2) all written correspondence exchanged between Great West Casualty Company and Marshall Investigative Group pertaining to File Number Q18991; (3) all invoices pertaining to File Number Q18991; (4) all internal written correspondence pertaining to File Number Q18991; (5) All reports, including drafts of any reports, pertaining to File Number Q18991; and (6) all payments received by Marshall Investigative Group from Great West Casualty Company in the last five years pertaining to investigation of personal injury claims

ECF No. 38, Ex 1 at 4, 7, & 10.  Plaintiff Bendyk failed to send notice of the subpoena and deposition to the defendants.  Defendants filed a motion to quash Plaintiff Bendyk's subpoena duces tecum and notice of deposition pursuant to Fed. R. Civ. P. 45(d)(3), arguing Plaintiff Bendyk failed to properly serve the subpoena and provide notice.  Defendants also argued the information sought was protected by the work product privilege.

---

[2] The Court has reviewed the documents requests, which were attached to Plaintiff Bendyk's motion to compel and agrees.  This may have been a typographical error, as there are other documents requests that are more applicable and were not referenced in Plaintiff Bendyk's motion.

On March 15, 2021, Plaintiff served an amended notice of deposition and subpoena duces tecum requesting the exact same information and documents she had requested on February 24, 2021. Defendants filed a motion to quash the amended subpoena and notice of deposition, again arguing the information sought was protected by the work product privilege. Defendants also argue the information is irrelevant to the claims at issue in this case.

The parties seem to be in agreement that the information and documents Plaintiff Bendyk seeks in her motion to compel is the same information and documents she seeks in her third party subpoena duces tecum and notice of deposition, with the exception of Item No. 6, the payments Marshall received in the past five years. It also appears that Defendants admitted in their original motion to quash that Plaintiff Bendyk requested the documents and information that is the subject matter of the third-party subpoena in her discovery requests. The Court, therefore, will address the merits of compelling Defendants to produce the information and documents, and will grant Defendants' motion to quash the third-party subpoena. Hasbro, Inc. v. Serafino, 168 F.R.D. 99, 100 (D. Mass. 1996) ("[i]n describing the relationship between Rule 34 and other discovery rules, at least one commentator indicates that '[i]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness [pursuant to Rule 45].'") (quoting 8A Wright, Miller & Marcus: Federal Practice and Procedure § 2204 (1994)); see also Thomas v. IEM, Inc., No. CIV. A. 06-886-B-M2, 2008 WL 695230, at *2 (M.D. La. Mar. 12, 2008) (quoting Burns v. Bank of Am., No. 03 CIV.1685 RMB JCF, 2007 WL 1589437 (S.D.N.Y. June 4, 2007) ("Rule 45 subpoenas, although not technically precluded by the language of Rule 45 from being served upon parties to litigation, are generally used to obtain documents from non-parties and are 'clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34.' ").

Defendants argue that the information and documents Plaintiff Bendyk seeks are protected by the work product doctrine. In diversity cases such as the one at bar, district courts are to "apply federal law to resolve work product claims and state law to resolve attorney-client privilege claims." Baker v. Gen. Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 2000) (citing Simon v. G.D. Searle & Co., 816 F.2d 397 (8th Cir. 1987)). Materials collected by counsel in anticipation of litigation are protected from disclosure during discovery under the work product doctrine. Hickman, 329 U.S. at 507. Courts have distinguished between two kinds of work product— ordinary work product and opinion work product. Ordinary work product includes factual information and is subject to disclosure upon a showing or need or hardship. See Gundacker v. Unisys Corp., 151 F.3d 842, 848 n. 4 (8th Cir. 1998). Opinion work product, which includes counsel's mental impressions, conclusions, opinions, or legal theories, has almost absolute immunity and can be discovered only in very rare and extraordinary circumstances. See In re Murphy, 560 F.2d 326, 336 (8th Cir. 1977).

The work product doctrine has been codified in the Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provides:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under ... this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

> Fed. R. Civ. P. 26(b)(3).

The Eighth Circuit has instructed "the privilege should be 'applied in a commonsense manner in light of reason and experience as determined on a case-by-case basis.'" Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 732 (8th Cir. 2002) (quoting Pittman v. Frazer, 129 F.3d 983, 988 (8th Cir. 1997)).

Defendants have the initial burden of showing that the work product privilege applies to the information and documents at issue. Id. Documents or materials that were prepared in anticipation of litigation "by or for a party or that party's representative" are covered by the work product doctrine. Fed. R. Civ. P. 26(b)(3) (emphasis added). Defendants have represented, and Plaintiff Bendyk does not dispute that the surveillance investigation by Marshall was done at the direction of Defendants in anticipation of litigation. Marshall was hired to conduct surveillance on the plaintiffs after Defendants received a letter of representation from Plaintiff's counsel. The Court finds, therefore, that documents and material prepared by Defendants and Marshall are covered by the work product doctrine.

If the party asserting work product bears its burden of proof with respect to establishing its entitlement to the privilege, Rule 26(b)(3) allows production of attorney work-product materials "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). Plaintiff Bendyk does not argue she has a substantial need for the information or the documents, but rather she argues the information and documents she seeks are discoverable because Defendants did not raise a timely work product objection to her discovery requests. Plaintiff Bendyk further argues that Defendants have waived the work product privilege by disclosing the Marshall investigative report.

Defendant B&G Transportation did raise the work product privilege in its responses to Plaintiff Bendyk's discovery requests. In Request No. 11, Plaintiff asked for "[a]ll photographs, videos, images, audio recordings or surveillance of Plaintiff or any of her family members." ECF No. 36, Ex 4 at 3. Defendant B&G Transportation responded: "Defendant objects to producing privileged material or work product of anyone other than Plaintiff. Marshall Investigative Report produced herein. B&G 0005-0039." Id. In Request No. 12, Plaintiff requested "[a] full and complete copy of the resume or curriculum vitae of the private investigator(s) hired by Defendant to surveil Plaintiff." Id. Defendant B&G Transportation responded, "Defendant objects to said request as overly broad, harassing and will not lead to the discovery of admissible evidence. Defendant objects to producing privileged material or work product. Subject to, none in Defendant's possession." Id. In request No. 13, Plaintiff asked for "[a]ll documents, video tapes, audio recordings, or electronic correspondence generated by any private investigator pertaining to Plaintiff." Id. at 4. Defendant B&G Transportation responded, "Defendant objects to producing privileged material or work product." Id. Finally, in Interrogatory 6, Plaintiff asked the following:

> Please identify by full and complete name, address, employer, and license number the private investigator hired by Defendant and/or Defendant's counsel to follow Bridgett Bendyk after the subject incident, state when the private investigator was hired, each date in which he surveilled Plaintiff, the means and method by which he surveilled Plaintiff, identify each piece of written or recorded information generated by said surveillance.

ECF. No. 36, Ex. 3 at 4. Defendant B&G Transportation answered,

> None other than those which are privileged or constitutes Defendant's work product. Defendant objects to producing privileged material or work product. It also seeks statements after litigation has ensued. In that regard, the Interrogatory would invade mental impressions and work product privilege of defense counsel and require disclosure of defense counsel strategy. Subject to and without waiving same, see Marshall Investigative Report produced herein.

Id. Plaintiff Bendyk is mistaken in her assertion that Defendants failed to assert the work product privilege in response to her discovery requests.

As for waiver, Plaintiff Bendyk argues because Defendants voluntarily disclosed investigative report, under Rule 502(a) of the Federal Rules of Evidence, Defendants have waived work product protection as to documents and information concerning the same subject matter.

The Eighth Circuit has stated "that disclosure to an adversary waives work product protection as to items actually disclosed." Pittman, 129 F.3d at 988 (citing In re Chrysler Motors Corp. Overnight Evaluation Program Litig., 860 F.2d 844, 846 (8th Cir. 1988). And "'[i]f documents otherwise protected by the work-product rule have been disclosed to others with an actual intention that an opposing party may see the documents, the party who made the disclosure should not subsequently be able to claim protection for the documents as work product. But disclosure of some documents does not destroy work product protection for other documents of the same character.'" Id. (quoting Wright & Miller, § 2024 at 209).

In 2008, Fed. R. Evid. 502 was enacted, which altered the application of waiver by disclosure. Rule 502 addresses when intentional or inadvertent disclosure of work product operates as a waiver for the subject matter of that work product. According to the Weinstein Evidence Manual, the rule was enacted, in part, to resolve a split in the circuits and to avoid the harsh circumstances in some circuits that held the disclosure of one document or communication resulted in "blanket waiver" for all information concerning the same subject matter. Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence Manual, § 18.02A[1] (2018). Rule 502 "'abolish[ed] the dreaded subject-matter waiver, i.e., that any disclosure of privileged matter worked a forfeiture of any other privileged information that pertained to the same subject matter.'" Appleton Papers, Inc. v. E.P.A., 702 F.3d 1018, 1026 (7th Cir. 2012) (quoting Trustees of Elec.

<u>Workers Loc. No. 26 Pension Tr. Fund v. Tr. Fund Advisors, Inc.</u>, 266 F.R.D. 1, 11 (D.D.C. 2010)).

In this case, the disclosure of the Marshall investigation report was intentional and not inadvertent – it was purposely disclosed in response to a discovery request – therefore, Rule 502(a) is applicable, which provides:

> (a) When the disclosure is made in a Federal proceeding or to a Federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if:
>
> > (1)    the waiver is intentional;
> >
> > (2)    the disclosed and undisclosed communications or information concern the same subject matter; and
> >
> > (3)    they ought in fairness to be considered together.

Fed. R. Evid. 502(a).

The Advisory Committee provided further clarification as to the application of Rule 502(a).

According to the Advisory Committee notes:

> the rule provides that a voluntary disclosure in a federal proceeding or to a federal office or agency, if a waiver, generally results in a waiver only of the communication or information disclosed; a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary. <u>See, e.g., In re United Mine Workers of America Employee Benefit Plans Litig.</u>, 159 F.R.D. 307, 312 (D.D.C. 1994) (waiver of work product limited to materials actually disclosed, because the party did not deliberately disclose documents in an attempt to gain a tactical advantage). Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner.

Fed. R. Evid. 502, Advisory Committee Notes, rev. 11/28/2007.

Here, Defendants produced the Marshall investigative report and they amended their discovery responses to provide further information about the investigator, the date the investigator

was hired, dates surveillance was conducted, the means and methods of surveillance, information generated by surveillance, as well as videos of Plaintiff Bendyk. Plaintiff, however,. is not satisfied with Defendants' response and seeks communications between Marshall and Defendants, as well as invoices from this investigation and others form the past five years. Citing to <u>Bear Republic Brewing Co. v. Cent. City Brewing Co.</u>, 275 F.R.D. 43 (D. Mass. 2011), Plaintiff argues that when a document covered by the work product doctrine is intentionally disclosed, Rule 502(2) "requires production of the information concerning the same subject matter so that the information can be fairly considered in context." ECF No. 36 at 6.

Setting aside that a district court case from U.S. District Court of Massachusetts is not controlling in this case, the undersigned does not find the reasoning in <u>Bear Republic Brewing Co.</u> to be persuasive. First, the district court in that case was dismissive of the Advisory Committee notes, finding they conflicted with the text of the Rule. <u>Bear Republic Brewing Co.</u>, 275 F.R.D. at 48 (finding Advisory Committee notes not to be controlling or even persuasive). This Court does not agree. The Advisory Committee notes provide guidance as to when fairness may require the disclosure of information otherwise protected by the work product doctrine. The notes are not inconsistent with or contrary to the langue of Rule 502(a), and they are in line with the protection the United States Supreme Court and the Eighth Circuit has afforded documents covered by the work product doctrine. <u>See</u> <u>e.g.</u>, <u>Hickman</u>, 329 U.S. at 511; <u>Pittman</u>, 129 F.3d at 988.

Second, finding the defendant's disclosure was voluntary and the documents and information at issue were within the same subject matter, the court in <u>Bear Republic Brewing Co.</u> essentially applied the waiver automatically without analyzing whether the plaintiff in that case established fairness required further disclosure of information and documents protected by work product. In this Court's view, application of a subject matter waiver is not automatic, but rather

the party seeking disclosure of the protected documents bears the burden of establishing fairness requires their disclosure. Appleton Papers, Inc., 702 F.3d at 1026 (placing burden on party seeking documents to establish fairness required disclosure of documents covered by work product doctrine).

Here, Plaintiff Bendyk argues fairness requires disclosure of the documents covered by the work product doctrine, including communications between defendants and Marshall, because she needs them to place the surveillance investigation in context and to cross examine the investigator effectively. Plaintiff asserts the defendants should be required to disclose this information because otherwise they will enjoy an unfair advantage. Following Plaintiff Bendyk's motion to compel, Defendants provided additional information about the surveillance investigation, including the disclosure of any video of Plaintiff Bendyk the defendants had. The Court finds the investigative report, along with the additional information Defendants provided are enough to place the surveillance investigation in context.

Plaintiff seeks emails and communications exchanged between Defendant and the private investigator, and draft reports, as well as information as to why the surveillance investigation was instigated. ECF No. 39 at 4. These documents and communications are likely to contain opinion work product, which is entitled to the highest protection. In re Murphy, 560 F.2d at 336. Work product advances a client's interest in obtaining complete legal advice and creates "a protected area in which the lawyer can prepare his [or her] case free from adversarial scrutiny." Hickman, 329 U.S. at 511. The work product doctrine promotes the adversarial system "by providing incentives to collect information and thoroughly prepare for litigation." Appleton Papers, Inc., 702 F.3d at 1026. There is nothing in the record to suggest that there is information in these communications without which Plaintiff would be unable to present her to claim or respond to

defenses raised by the Defendants.  The Court further finds Defendants do not have an unfair advantage by keeping these communications confidential.  The Court believes with the additional disclosures Defendants provided, Plaintiff Bendyk has enough information to place the surveillance investigation into context, and she has not met her burden of establishing that fairness requires the disclosure of additional communications and documents covered by the work product doctrine.  Plaintiff Bendyk's Motion to Compel is denied.

### C.     Motion for Extension of Rule 35 Deadline

Finally, Defendants move that the Court extend the deadline to request a Rule 35 examination of Plaintiff Gregg until May 10, 2021.  Defendants submit that they have not been able to receive the entirety of Plaintiff's physical and psychologist records because they did not receive executed authorizations from Plaintiff Gregg until March 11, 2021.  Defendants also assert that Plaintiff Gregg's deposition is scheduled for May 4, 2021, and they would like to schedule the Rule 35 examination after his deposition, when they have a better understand of the injuries he is claiming. Defendants also move that the Court enter an order requiring Plaintiff Bendyk to present for a Rule 35 mental examination on May 10, 2021, or at a date otherwise agreeable to counsel.

Plaintiff Bendyk did not respond to Defendants' motion and the time to do so has expired, therefore, she has waived any objections to the motion.  Plaintiff Gregg opposes Defendants' motion arguing Defendants failed to include a statement of good faith conference pursuant to Local Rule 3.04(A).  Plaintiff Gregg also argues Defendants have not established "good cause" under Fed. R. Civ. P. 16(b)(4) for the extension of the deadline.

While the Court encourages the parties to meet and confer about all of their motions before they are filed, the Court will not deny a motion to extend a deadline in the CMO on the grounds that a party failed to include a statement of good faith conference pursuant to Local Rule 3.04(A).

Defendant's motion concerns a scheduling issue, not a discovery dispute. What is more, defense counsel represent in their reply memorandum that they have conferred with plaintiffs' counsel about the motion. Furthermore, the Court finds Defendants have established "good cause" for requesting the extension of time. The Court will extend the deadline in the CMO to request a Rule 35 examination.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Bradley Olson's Amended Motion to Quash is **DENIED.** (ECF No. 32)

**IT IS FURTHER ORDERED** that on or before **April 30, 2021**, the parties shall file a joint proposed protective order that complies with the applicable provisions of HIPPA to protect the confidentiality of Defendant Bradley Olson's employment records.

**IT IS FURTHER ORDERED** that Defendants B&G Transportations, LLC, and Bradley Olson's Amended Motion to Quash Plaintiff Bridget Bendyk's Subpoena Duces Tecum Issued to Marshall Investigative Group is **GRANTED.** (ECF No. 45)

**IT IS FURTER ORDERED** that Defendants B&G Transportations, LLC, and Bradley Olson's Motion to Quash Plaintiff Bridgett Bendyk's Subpoena Duces Tecum Issued to Marshall Investigative Group is **DENIED as moot.** (ECF No. 38)

**IT IS FURTHER ORDERED** that Plaintiff Bridgett Bendyk's Motion to Compel Discovery Reponses is **DENIED.** (ECF No. 35).

**IT IS FURTHER ORDERED** that Defendants B&G Transportations, LLC, and Bradley Olson's Motion for a Rule 35 Examination of Plaintiff Bendyk and Request for Extension of: Time to Request Rule 35 Examination of Plaintiff Michael Gregg is **GRANTED.** (ECF No. 47)

**IT IS FURTHER ORDERED** that Plaintiff Bridgett Bendyk shall present for a Rule 35 mental examination, via Zoom, on May 10, 2021, or at a date otherwise agreeable to counsel.

**IT IS FURTHER ORDERED** that the Case Management Order issued July 14, 2020, is modified as follows:

3(d)     Requests for physical or mental examinations of parties pursuant to Rule 35, Fed. R. Civ. P., must be made by **May 10, 2021**, and any exam must be completed by **July 9, 2021.**

RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of April, 2021.